No. 54,193

ARROWHEAD CONSTRUCTION COMPANY OF DODGE CITY, KANSAS, INC., *Plaintiff,* v. ESSEX CORPORATION and HERITAGE CONSTRUCTION MANAGEMENT COMPANY, *Defendants,* UNIVERSAL SURETY COMPANY and INLAND INSURANCE COMPANY, *Defendants, Appellants and Cross-Appellees,* and FRANK CROTTS and GLENN HENLEY, *Defendants, Appellees and Cross-Appellants.*

(662 P.2d 1195)

Opinion filed April 29, 1983.

*Patricia Rose Myers,* of Reynolds, Peirce, Forker, Suter & O'Neal, of Hutch-

inson, and *Patrick W. Kennison,* of Kutak, Rock & Huie, of Omaha, Nebraska, argued the cause and *Kenneth E. Peirce,* of Reynolds, Peirce, Forker, Suter & O'Neal, of Hutchinson, was with him on the brief for the appellants and cross-appellees.

*Scott E. Daniel,* of Daniel & Daniel, of Garden City, argued the cause and was on the brief for appellees and cross-appellants.

The opinion of the court was delivered by

HERD, J.: This is an action for breach of contract. The appeal is from the trial court's order granting judgment on the counter-claims of Frank Crotts and Glenn Henley.

A contract for the construction of a low-income housing project in Lakin is the issue from which this case arose. The original contract for the project was let to Essex Corporation as the general contractor on March 15, 1978. On March 23, 1978, Essex acquired a "Labor and Material Payment Bond" from Inland Insurance Company and Universal Surety Company.

Essex subcontracted the job to Heritage Construction Management Company. Pursuant to a contract dated April 21, 1978, Heritage subcontracted to Arrowhead Construction Company of Dodge City. Arrowhead then discussed a possible subcontract for some of the work with Frank Crotts and Glenn Henley. The existence of a firm contract between Crotts and Henley and Arrowhead is a matter of dispute and will be discussed in more detail later. Nevertheless, Crotts and Henley began work on the Lakin project on June 6, 1978, and completed a substantial portion of the work they set out to perform.

During the course of the construction project Heritage became concerned by the failure of Arrowhead to complete the job. As a result Heritage hired another contractor to finish the project. Arrowhead's last day on the Lakin project was August 3, 1978. On August 15, 1978, Arrowhead filed a mechanics' lien statement against the premises claiming a balance due from Heritage of $21,768.00. Crotts and Henley, in turn, filed a mechanics' lien on August 30, 1978, claiming a balance due from Arrowhead of $6897.00.

On December 11, 1978, Arrowhead filed a petition in Kearny County District Court listing as defendants Essex, Universal, Inland, Heritage, the City of Lakin and Crotts and Henley. The petition alleged Heritage breached its contract by failing to pay money owing to Arrowhead. It also alleged Essex was liable for

Heritage's debt as general contractor and that Universal and Inland were liable for the debt on the labor and material payment bond. Finally, it asked that the priority of Crotts and Henley's lien be determined in the same action. Crotts and Henley filed their answer asking the court to determine the liability of Essex, Universal and Inland. In their counterclaim against Arrowhead they alleged the existence of a contract between the two parties pursuant to which Arrowhead would pay Crotts and Henley $8397.00. Crotts and Henley claimed they performed their part of the bargain but that Arrowhead had paid them only $1500.00. Finally, Crotts and Henley filed a cross-claim alleging Essex, as the general contractor, was liable for Arrowhead's breach and that Universal and Inland were liable as sureties.

The other corporate defendants, Essex, Universal, Inland, and Heritage, were represented by John G. Sauer of Garden City. They filed their answer on February 9, 1979. With respect to Arrowhead's petition they offered twelve defenses, including the ninth which alleged, "Plaintiff cannot recover upon the labor and material payment bond because it failed to comply with the notice requirements thereof." In its counterclaim to Arrowhead's petition these defendants alleged breach of contract by Arrowhead.

With regard to Crotts and Henley's cross-claim these defendants offered nine defenses. Their fourth defense alleged, "Defendants Crotts and Henley cannot recover upon the labor and material payment bond because they failed to comply with the notice requirements thereof." The seventh defense claimed, "Defendants Crotts and Henley cannot recover against any of these defendants because it lacks privity of contract with them." The eighth defense asserted, "Defendants Crotts and Henley are not a proper claimant under the labor and material bond as they have no direct contract with the principal, Defendant Essex Corporation, or with the sub-contractor of the principal, defendant Heritage Construction Management Company."

On April 30, 1979, the defendants Essex, Universal, Inland, and Heritage, filed a "Motion for Judgment on the Pleadings" asking the court to discharge the liens previously filed by Arrowhead and Crotts and Henley. In support of this motion the defendants alleged the labor and material payment bond ac-

quired by Essex was a "statutory public works" bond pursuant to K.S.A. 60-1111 which authorizes the discharge of previously filed liens when such a bond is filed with the district court.

On May 7, 1979, the district court issued an "Order Granting Judgment on the Pleadings." The court found the bond complied with K.S.A. 60-1111 as a public works bond and as such discharged the liens previously filed by Crotts and Henley and Arrowhead.

The May 7 order was the result of a compromise between the parties pursuant to which, on July 9, 1979, attorney Sauer filed "amendments" to the defendants' answers to the claims of Arrowhead and Crotts and Henley. The defendants admitted Arrowhead had complied with the notice requirements of the labor and material payment bond, thereby abandoning their ninth defense.

With regard to the claims of Crotts and Henley the defendants' answer was amended to admit the allegations Essex was liable as general contractor in the absence of payment by its subcontractors and that Crotts and Henley had fully complied with the notice requirements of the labor and material payment bond. Accordingly, the defendants abandoned their defenses against Crotts and Henley dealing with privity and the notice requirements of the bond.

Armed with these admissions Crotts and Henley filed their own motion for judgment on the pleadings July 3, 1980, alleging Arrowhead had admitted the allegations in their counterclaims by failing to answer. On August 13, 1980, the trial court held: "[T]he only factual controversy as to the amount due the defendants Crotts and Henley and the quality of their work is a question as to whether or not a certain overhang was built incorrectly . . . ." The court further found "this small controversy is separable from the other controversies involved in the case . . ." and ordered it tried as a separate matter.

Previously, on October 18, 1979, attorney Sauer withdrew from the case and left the practice of law for another occupation. It was not until shortly before the court's order on August 13, 1980, severing the trial that defendants' present counsel, Mr. Kenneth Peirce, entered the case.

A year later on September 11, 1981, a pretrial conference was held. At that time the trial of Crotts and Henley's claim was set

for September 22, 1981. The other issues were tentatively set for trial January 12, 1982. With regard to the claims of Crotts and Henley the court further stated in part:

"[I]f Crotts and Henley are successful in their claim for monies due and owing from Arrowhead, said sums shall be paid by Universal Surety Company and/or Inland Insurance Company. The Court finds as its basis for such ruling:

"1. The parties are estopped from asserting that no written notice of Crotts and Henley being subcontractors of Arrowhead because Essex and Heritage had actual knowledge of Crotts and Henley working on the project, and further Crotts and Henley received materials and directions from employees of Essex and Heritage.

"2. The defendants, Essex, Heritage, Universal and Inland waive their defense of written notice."

At the pretrial conference defendants requested they be allowed to withdraw their admissions made on July 9, 1979. They argued they were erroneous admissions of law. Essentially, defendants desired to reinstate their original answer. The trial court refused to grant their request.

The case was tried to the court on September 22, 1981. The trial court found for Crotts and Henley, holding they had a contract with Arrowhead at $1.35 per square foot and granted them judgment in the amount of $6519.00 with interest at 12% from the date of judgment against Arrowhead with Universal Surety Company and Inland Insurance Company as sureties. The court denied prejudgment interest.

The defendants Universal and Inland have appealed. Crotts and Henley also appeal the trial court's failure to award them prejudgment interest. The other matters scheduled to be tried in January of 1982 have been temporarily stayed.

Appellants first claim the trial court erred in refusing to allow them to reinstate their original answer by withdrawing the admissions made in the pleadings filed July 9, 1979. They argue their attorney John G. Sauer made errors of law in the admissions which are subject to correction.

It is well established that a court is not bound by erroneous stipulations or admissions with regard to questions of law. *State, ex rel., v. Masterson*, 221 Kan. 540, 551, 561 P.2d 796 (1977); *Urban Renewal Agency v. Reed*, 211 Kan. 705, 712, 508 P.2d 1227 (1973).

The essence of this claim pertains to appellants' attorney's stipulation the labor and material payment bond is a statutory

public works bond in compliance with K.S.A. 60-1111 and that notice requirements had been met to invoke the bond. Let us examine the bond statute and review the circumstances surrounding the stipulations to determine if this issue falls within the definition of erroneous stipulation of law.

K.S.A. 60-1111 deals with public works bonds. It provides:

"Whenever any public official shall, under the laws of the state, enter into contract in any sum exceeding one thousand dollars ($1,000) with any person or persons for the purpose of making any public improvements, or constructing any public building or making repairs on the same, such officer shall take, from the party contracted with, a bond to the state of Kansas with good and sufficient sureties in a sum not less than the sum total in the contract, conditioned that such contractor or the subcontractor of said contractor shall pay all indebtedness incurred for labor furnished, materials, equipment, or supplies, used or consumed in connection with or in or about the construction of said public building or in making such public improvements."

"The bond shall be approved by and filed with the clerk of the district court of the county in which such public improvement is to be made. When such bond is filed, no lien shall attach under this article, and if when such bond is filed liens have already been filed, such liens shall be discharged. Any person to whom there is due any sum for labor or material furnished, as stated in the preceding section, or his or her assigns, may bring an action on said bond for the recovery of said indebtedness but no action shall be brought on said bond after six (6) months from the completion of said public improvements or public buildings."

The bond furnished by Essex, as principal, was issued in favor of the City of Lakin. It provided in pertinent part:

"THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the contract then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

"A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of Principal  . . . ."

A statutory public works bond has two characteristics which are important to a discussion of this issue. First, such a bond applies to "all indebtedness" incurred in making public improvements. Thus, no privity with the general contractor is required. Second, such a bond, properly filed, acts to discharge all liens filed in connection with the construction. It is apparent the bond furnished the City of Lakin did not technically comply with the statute since it limited its coverage to claimants having a direct contract with Essex.

This case presents a complicated factual situation. Arrowhead

and Crotts and Henley had filed mechanics' liens on the premises. Appellants could not be paid until the liens were released. They were therefore anxious to have the liens discharged. Through their attorney they requested the trial court to declare the labor and material payment bond acquired by Essex a public works bond pursuant to K.S.A. 60-1111. Such a holding would operate to discharge the liens. The trial court relied on appellants' stipulation and granted the request on May 7, 1979. Later appellants amended their pleadings to conform to the May 7 order and struck the defenses relating to the privity and notice requirements of the bond. Now appellants wish to withdraw the amendments to enable them to argue Crotts and Henley are not claimants under the express conditions of the bond.

Essentially, then, appellants are claiming the May 7 order which declared the bond was a statutory public works bond pursuant to K.S.A. 60-1111 was based on a mistake of law. Appellants' theory is that in the motion asking for the May 7 order and in the subsequent amendments to appellants' original pleadings, their attorney made erroneous admissions of law. Indeed, it is true the stipulation turned the labor and material payment bond into something it technically was not.

However, important reasons weigh against reversal of the trial court. First, contrary to appellants' argument, there was no mistake of law. Mr. Sauer was obviously quite aware a public works bond was required of Essex and the one on file did not comply with the statute. He was also aware the failure to file a proper bond would prevent the city from paying Essex. Finally, he was concerned about the liens filed by Arrowhead and Crotts and Henley. Sauer set out to remedy this situation by stipulating the bond's coverage to meet the statutory requirements. This stipulation was agreed to by all parties and the trial court. No one was operating under any mistaken beliefs.

Further, this is a classic case for the assertion of the doctrine of estoppel. As a general rule parties to an action are bound by their pleadings and judicial declarations and are estopped to deny or contradict them where the other parties to the action relied thereon and changed their position by reason thereof. 28 Am. Jur. 2d, Estoppel and Waiver § 71, p. 701. As noted above Crotts and Henley did not object to the stipulation that the bond was a statutory public works bond. Instead they relied on the stipula-

tion and in the process gave up their ultimate remedy — foreclosure on their lien. They then had to depend upon their ability to prove their breach of contract claim against Arrowhead. Obviously, it would be prejudicial to Crotts and Henley to allow appellants to change their position at this late date. See *Cosgrove v. Young,* 230 Kan. 705, Syl. ¶ 6, 642 P.2d 75 (1981).

Finally, appellants previously acquiesced in the trial court's judgment to their benefit and cannot now object to it on appeal. *Halpin v. Frankenberger,* 231 Kan. 344, 348, 644 P.2d 452 (1982).

Appellants next argue the trial court erred in finding a firm contract existed between Crotts and Henley and Arrowhead.

The question as to whether a binding contract was entered into depends upon the intention of the parties and is a question of fact. *Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 60, 643 P.2d 100 (1982). As such, this court's function is only to determine if the trial court's finding there was a contract is supported by substantial competent evidence. *International Petroleum Services, Inc. v. S & N Well Service, Inc.,* 230 Kan. 452, Syl. ¶ 8, 639 P.2d 29 (1982). If it is, there was no error.

In *Steele v. Harrison,* 220 Kan. 422, 428, 552 P.2d 957 (1976), this court reiterated the basic rules regarding contract formation:

"In order for parties to form a binding contract there must be a meeting of the minds on all the essential terms thereof. [Citations omitted.] To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract."

See also *Sidwell Oil & Gas Co. v. Loyd,* 230 Kan. 77, 79, 630 P.2d 1107 (1981).

Appellants argue here the parties had not agreed on the essential term of price. The evidence shows Arrowhead and Crotts had originally discussed a "ball park" base bid figure of around $1.25 per square foot for rough framing carpentry work, but a firm figure was never specifically agreed on. Nevertheless, Crotts and Henley began work and later received a written contract from Arrowhead specifying payment at $1.25 per square foot. Crotts never signed that contract but instead informed Arrowhead he would require payment of $1.35 per square foot. Crotts and Henley continued to work until they realized they were not going to be paid. Nothing was ever settled regarding the price.

The Restatement (Second) of Contracts § 33 (1981), offers some guidance here:

"(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

"(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

"(3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."

Comment *a* to this section makes clear the omission of a single term is not always fatal to the contract:

"[T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain.

"An offer which appears to be indefinite may be given precision by usage of trade or by course of dealing between the parties. Terms may be supplied by factual implication, and in recurring situations the law often supplies a term in the absence of agreement to the contrary."

The Restatement assumes courts will, in such instances, supply a term which is "reasonable in the circumstances." (See Section 204.) This term should be one which "comports with community standards of fairness and policy . . . ." Comment *d*, § 204. More specifically, Comment *e* to Section 33 states:

"Where the parties manifest an intention not to be bound unless the amount of money to be paid by one of them is fixed or agreed and it is not fixed or agreed there is no contract. Uniform Commercial Code § 2-305(4). Where they intend to conclude a contract for the sale of goods, however, and the price is not settled, the price is a reasonable price at the time of delivery if (a) nothing is said as to price, or (b) the price is left to be agreed by the parties and they fail to agree, or (c) the price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded. Uniform Commercial Code § 2-305(1). Or one party may be given power to fix the price within the limits set by agreement or custom or good faith. Similar principles apply to contracts for the rendition of service."

Here the evidence clearly shows the parties intended to be bound by a contract. They discussed the particulars of the project beforehand, Crotts and Henley began work, a representative of Arrowhead visited with them at the project site where Crotts and Henley informed him of their requested price, and Crotts and Henley continued working with no objection from Arrowhead.

Further, the reasonableness of the price term supplied by the trial court is clear. At trial Arrowhead's principal, Wayne Hunter, testified "for the amount of work they had to do and under the circumstances $1.35 would have been extremely reasonable." This issue is without merit.

Appellants next argue the trial court erred in admitting the hearsay testimony of Tony Bottiato, an employee of Heritage.

One of the issues at trial was whether Crotts and Henley had properly constructed a certain overhang. Crotts claimed he had no details regarding the specific length of the overhangs, so he asked Mr. Bottiato, who was at the jobsite. Following is an excerpt from the transcript:

"Q: After you had completed the structuring end of this unit, of the storage area, how did you decide what length to cut the overhangs?

"A: We inquired of Mr. Bottiato what they required for overhang on that since we didn't have any details. He figured a little bit and said —

"MR. PEIRCE: (Interrupting) Objection to anything he might have said, Your Honor.

"MR. DANIEL: I would advance the argument that Mr. Bottiato is a project engineer for Heritage and is in fact an agent or representative of Heritage Construction Company, and that's a statement against interest and well within —

"THE COURT: (Interrupting) In this instance, the objection is overruled and he may answer.

"Q: (By Mr. Daniel) What were you told by Mr. Bottiato?

"THE COURT: No. That's not the question that was asked.

"MR. DANIEL: Could you read it back for me, please?

. . . .

"Q: (By Mr. Daniel) Could you answer that, please?

"A: Yes, sir. We made an inquiry of Mr. Bottiato what was required as a overhang on these units seeing as we didn't have any plans, and he did figure a little bit and indicated to us what they required that they wanted for an overhang.

"Q: Pursuant to those indications, did you in fact cut the rafters at that point in time?

"A: Yes, sir."

Hearsay is evidence of an out-of-court statement asserting that a fact is true and offered to prove the truth of the matter asserted. K.S.A. 1982 Supp. 60-460. Here, no "statement" was offered. There was only the fact that Mr. Bottiato made a statement to Crotts. No one testified regarding the content of that statement. As such, the evidence was not hearsay.

In their cross-appeal Crotts and Henley argue the trial court erred in not awarding them prejudgment interest on their damages.

In *First National Bank v. Bankers Dispatch Corporation*, 221 Kan. 528, 537, 562 P.2d 32 (1977), this court set out the general rule regarding prejudgment interest on damages in a breach of contract action:

"Where an amount is due upon contract, either expressed or implied, and there is no uncertainty as to the amount which is due or the date on which it becomes due, the creditor is entitled to recover interest from the due date."

Appellees cite *Phelps Dodge Copper Products Corp. v. Alpha Construction Co.*, 203 Kan. 591, 455 P.2d 555 (1969), for their claim that the fact there was a question as to the amount of setoff to be awarded to appellants does not change the liquidated nature of the appellee's damages on breach of contract. This is true. In *Phelps*, however, the trial court found the total indebtedness due on account was not disputed. Here, on the other hand, that amount was contested. Appellants claim there was never a firm contract and if there was, the price was $1.25 per square foot. Thus the amount of damages was not liquidated until the trial court found there was a contract for $1.35 per square foot and entered judgment accordingly. The trial court did not err in denying prejudgment interest.

The judgment of the trial court is affirmed.