(783 P.2d 353)

No. 63,073
No. 63,389

WICHITA SHEET METAL SUPPLY, INC., *Appellant*, v. DAHLSTROM AND FERRELL CONSTRUCTION CO., INC., and THE UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellees*, and AIR MOVING EQUIPMENT, INC., *Appellant*, v. THE UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellee*.

Opinion filed December 8, 1989.

*William M. Kehr*, of Martin, Churchill, Overman, Hill & Cole, Chartered, of Wichita, for appellant Wichita Sheet Metal Supply, Inc.

*Edward Stephens*, of Leavenworth, for appellant Air Moving Equipment, Inc.

*Bruce W. Beye*, of Polsinelli, White, Vardeman, & Shalton, P.C., of Overland Park, for appellees.

*William A. Larson*, of Gehrt & Roberts, Chartered, of Topeka, was on the brief *amicus curiae* for The Associated General Contractors of Kansas, Inc.

Before ELLIOTT, P.J., THEODORE B. ICE, District Judge, assigned, and PHILIP C. VIEUX, District Judge, assigned.

VIEUX, D.J.: In 1986 the City of Leavenworth entered into a contract with Dahlstrom & Ferrell Construction Company, Inc., (D&F) for the construction of a community center. D&F provided a public works bond as required by K.S.A. 60-1111 to ensure payment of indebtedness incurred in the construction of the building. This bond was secured through United States Fidelity and Guaranty Company, Inc. (USF&G).

In 1987 D&F subcontracted with High Tech Construction, Inc., (HTC) for certain mechanical work on the project. HTC, in turn, subcontracted with ACI, Inc., for this same work. ACI ordered supplies from Wichita Sheet Metal Supply, Inc., (WSM) and Air Moving Equipment, Inc., (AME) which were allegedly delivered to and incorporated into the project.

As a result of ACI filing for bankruptcy protection in 1988, WSM and AME were not paid for the materials provided. WSM and AME separately filed actions against D&F and USF&G for payment. In both cases, D&F and USF&G filed motions for summary judgment. The motions were sustained by the trial court, which determined that, as a matter of law, supplies to "sub-subcontractors" were not covered by K.S.A. 60-1111 public works bonds. WSM and AME each timely appealed the orders, and the cases are now consolidated.

Summary judgment is proper when the record conclusively shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Danes v. St. David's Episcopal Church*, 242 Kan. 822, 830, 752 P.2d 653 (1988); K.S.A. 60-256(c). " 'Where the facts presented

in the motion are subject to conflicting interpretations or reasonable persons might differ as to their significance summary judgment is improper.' " *Busch v. City of Augusta*, 9 Kan. App. 2d 119, 122, 674 P.2d 1054 (1983). "An appellate court should read the record in the light most favorable to the party against whom summary judgment was entered. It should take such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant." *Busch v. City of Augusta*, 9 Kan. App. 2d 119, Syl. ¶ 3. "Factual inferences tending to show triable issues are to be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of fact, a motion for summary judgment will be denied." *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 602, 738 P.2d 1246 (1987).

The facts, as stated above, are not in dispute. The case turns on legal conclusions regarding the scope of liability on public works bonds.

The bond required by K.S.A. 60-1111 must be of sufficient sureties, "conditioned that such contractor or the subcontractor of such contractor shall pay all indebtedness incurred for labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of such public building." The filing of such a bond bars the attachment of any lien and discharges existing liens, its obvious purpose to preclude the seizing and selling of public property to satisfy liens for labor and materials. The statute specifically states that "*[a]ny person* to whom there is due any sum for labor or material furnished . . . may bring an action on such bond for the recovery of such indebtedness." (Emphasis added.) K.S.A. 60-1111(b).

With no on-point Kansas precedent, the trial court accepted the defendants' argument that this statute, K.S.A. 60-1111, coupled with the mechanic's lien statute, K.S.A. 1988 Supp. 60-1103, and related Kansas case law, precludes suppliers to sub-subcontractors from suing on the bond. We disagree.

The Kansas Supreme Court has stated that public works bonds filed pursuant to K.S.A. 60-1111 are substitutes for mechanics' liens, and, in general, it is appropriate to analogize rules applicable to mechanics' liens to contractors' bonds. *J. W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 508-09, 758 P.2d

738 (1988). Moreover, contractors' bonds are for the use of all persons in whose favor liens might occur. 243 Kan. at 508.

K.S.A. 1988 Supp. 60-1103(a), the mechanic's lien statute, provides:

"Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, *under an agreement with the contractor, subcontractor or owner contractor* may obtain a lien for the amount due in the same manner and to the same extent as the original contractor." (Emphasis added.)

Defendants argue and the trial court agreed that, as to subcontractors, the language in K.S.A. 1988 Supp. 60-1103(a) restricts coverage to only those agreements with first-tier subcontractors. The court apparently based its conclusion on the omission of the term "sub-subcontractor" in either statute, K.S.A. 1988 Supp. 60-1103 or K.S.A. 60-1111, and on Gard's comments to 60-1103 in his Kansas Code of Civil Procedure 2d Annotated (1979). The trial court mischaracterized Gard's comments. Regarding 60-1103(a), Gard writes:

"[T]he right to a lien is expressly extended to protect persons furnishing labor, equipment, materials or supplies not only under an agreement with the contractor but also with 'a subcontractor of the contractor.' This is a rejection of the principle of *Nixon v. Cydon Lodge*, [56 Kan. 298, 43 Pac. 236], interpreting the former statute and holding that the lien provisions of the statute did not cover a subcontractor of a subcontractor. The extension under this subsection is not ad infinitem but protects only those dealing with a subcontractor of the one having the original contract."

Again, in his comment to 60-1111, the controlling statute in this case, Gard explains:

"Prior to the amendment of the former statute in 1931 it had been held in *Indiana Limestone Co. v. Cuthbert*, [126 Kan. 262, 267 Pac. 983], that limestone furnished to a subcontractor, and used in a building, was not the subject of a lien by the supplier. The 1931 amendment made the liability under the bond extend to the obligations of 'subcontractor or subcontractors of said contractor or contractors' and thus repealed the effect of the *Indiana Limestone* decision. So now suppliers of subcontractors are protected. This is consistent with the new policy of Section 60-1103 extending to subcontractors of subcontractors the right to file liens."

Kansas cases addressing scope of liability under public works bonds, while factually distinguishable from the present case, provide rationale consistent with allowing suppliers of sub-subcon-

tractors to reach the bond. "The purpose of K.S.A. 60-1111 is to protect the contributions of those assisting in the construction of public improvements and public works and the bond given in compliance with the statute must be construed to accomplish the end which the legislature had in view." *Cedar Vale Co-op Exch., Inc. v. Allen Utilities, Inc.*, 10 Kan. App. 2d 129, 131, 694 P.2d 903, *rev. denied* 237 Kan. 886 (1985) (supplier of first-tier subcontractor may sue on a public works bond) (citing *Leidigh & Havens Lumber Co. v. Bollinger*, 193 Kan. 600, 602, 396 P.2d 320 [1964]).

"A statutory public works bond has two characteristics which are important to a discussion of this issue. First, such a bond applies to 'all indebtedness' incurred in making public improvements. Thus, no privity with the general contractor is required. Second, such a bond, properly filed, acts to discharge all liens filed in connection with the construction." *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241, 246, 662 P.2d 1195 (1983) (contractor and surety estopped from excluding sub-subcontractor from coverage of statutorily inadequate bond).

The language of K.S.A. 60-1111(b) is supportive as well. It specifically permits actions for recovery on public works bonds by "[a]ny person to whom there is due any sum for labor or material furnished."

It is argued by the defendants as well as in the *amicus* brief of the Associated General Contractors of Kansas, Inc., (AGC) that WSM and AME are remote parties over which the general contractor has no control and that allowing them to reach the bond allows any party supplying materials to any tier of subcontractor to reach the bond. It is noted that the extension of protection to remote suppliers, suppliers of a supplier, has been addressed and has been explicity precluded. 243 Kan. at 510 (applies discussion of K.S.A. 60-1111 predecessor in *Leidigh & Havens Lumber Co. v. Bollinger*, 193 Kan. at 603; *Indiana Limestone Co. v. Cuthbert*, 126 Kan. 262, 267 Pac. 983 [1928]). The instant case, however, is only addressed to the immediate supplier to a sub-subcontractor. Moreover, when viewed in light of the mechanic's lien statute, first-tier suppliers are entitled to liens because they have "an agreement" with a subcontractor, which, as above, is construed to include agreements with sub-subcontractors.

The *amicus* brief addresses possible adverse effects of protecting suppliers of any tier subcontractor. This case, however, involves only a second-tier subcontractor, and, therefore, may not operate as AGC envisions. Furthermore, restricting protection to only those in privity with the general contractor contravenes both the purpose and the meaning of K.S.A. 60-1111, as previously discussed. The court also notes that in this instant case the general contractor sought to insulate itself from just this type of problem by requiring the subcontractor to post its own bond. The general contractor, however, apparently failed to enforce that particular element of its contract with its subcontractor.

The defendants further urge that the plaintiffs are precluded from reaching the bond by the language of the bond itself. The court rejects this argument. When a statute requires a bond to be given, the statutory terms and conditions will be read into the bond and conditions not required by statute will be stricken from the bond as surplusage. *Stevens v. Farmers Elevator Mutual Ins. Co.*, 197 Kan. 74, 78, 415 P. 2d 236 (1966). In *Arrowhead Construction Co. v. Essex Corp.*, 233 Kan. at 246, a bond with very similar language was held not in compliance with K.S.A. 60-1111 and was endowed by the court with the terms and conditions of the statute estopping the contractor and surety from excluding a sub-subcontractor from bond protection.

Pursuant to the foregoing, it is concluded that the trial court erred in granting the defendants summary judgment. Defendants were not, as a matter of law, entitled to summary judgment.

The next issue on appeal is whether the trial court erred in finding that no contract existed between AME and D&F. AME contends that a contract existed between it and D&F, apparently to establish its eligibility to recover on the bond consistent with the trial court's view of bond coverage as expressed in the prior WSM decision. AME further contends that whether a contract existed was a question of fact and, therefore, was inappropriate for determination in a summary judgment. The second argument will be addressed first. WSM does not assert these arguments.

The scope of appellate review of summary judgment cases discussed in Issue I is equally applicable here. Although all facts and reasonable inferences are to be viewed in favor of the party opposing summary judgment, the opposing party "has the affirm-

ative duty to come forward with facts to support its claim, although it is not required to prove its case." *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

AME contends the trial court erroneously found there was no contract between AME and D&F. "The question as to whether a binding contract was entered into depends upon the intention of the parties and is a question of fact." *Arrowhead Constr. Co.,* 233 Kan. at 248.

AME argues that usage of trade· as defined in K.S.A. 84-1-205(2) may be used to establish the formation of an oral contract and that AME's delivery of supplies to the job site constitutes usage of trade. D&F disputes whether AME delivered supplies directly to the job site or to ACI. In support of its claim, AME provided the trial court with an affidavit from Don Hembree, president of AME, stating that he shipped the items directly to the job site. Likewise, D&F submitted an affidavit of Kevin Kelly, D&F's project manager, stating that AME "allegedly furnished supplies only to ACI who then furnished such supplies to HTC on the project." The fact regarding delivery was, therefore, controverted.

To preclude summary judgment, however, a disputed issue of fact must be material. *Bacon,* 243 Kan. at 307. "If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact." *Secrist v. Turley,* 196 Kan. 572, 575, 412 P.2d 976 (1966). In light of the trial court's decision 19 days earlier in the WSM case, finding that only a party to an agreement or contract with a subcontractor or general contractor could reach a public works bond, the existence of a contract between AME and D&F would allow it to prevail where WSM had lost. The factual dispute over contract formation was material to AME's case.

By submitting Hembree's affidavit, AME met its affirmative duty to come forward with facts to support its claim. The court, therefore, erred in finding that no contract existed between AME and D&F.

Because plaintiffs are, as a matter of law, covered under the public works bond, and AME's contract claim was an attempt to establish coverage under the bond via the trial court's erroneous conclusions of law, remand on the contract claim is unnecessary.

The summary judgment against the plaintiffs is reversed, and the matter is remanded for further proceedings in accordance with this decision.