No. 63,073
No. 63,389

WICHITA SHEET METAL SUPPLY, INC., *Appellant*, v. DAHLSTROM AND FERRELL CONSTRUCTION CO., INC., and THE UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellees*.

AIR MOVING EQUIPMENT, INC., *Appellant*, v. THE UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellee*.

(792 P.2d 1043)

Opinion filed May 25, 1990.

*Michelle Hostetler*, of Martin, Churchill, Overman, Hill & Cole, Chartered, of Wichita, argued the cause, and *William M. Kehr*, of the same firm, was on the briefs for appellant Wichita Sheet Metal Supply, Inc.

*Edward Stephens*, of Leavenworth, argued the cause and ·was on the brief for appellant Air Moving Equipment, Inc.

*Jeffrey B. Rosen*, of Kansas City, Missouri, argued the cause, and *Bruce W. Beye*, of Polsinelli, White, Vardeman & Shalton, a Professional Corporation, of Overland Park, was with him on the brief for appellees Dahlstrom & Ferrell Construction Co., Inc., and United States Fidelity and Guaranty Co.

*William A. Larson*, of Gehrt & Roberts, Chartered, of Topeka, was on the brief for *amicus curiae* The Associated General Contractors of Kansas, Inc.

The opinion of the court was delivered by

McFARLAND, J.: In this consolidated appeal, two suppliers of materials to a second tier or "sub-subcontractor" seek to recover against the general contractor's public works bond issued pursuant to K.S.A. 60-1111. The trial court entered summary judgment in favor of the general contractor and the issuer of the bond on the basis that a K.S.A. 60-1111 public works bond afforded no protection to the suppliers herein. The suppliers appealed. The Court of Appeals reversed the trial court, holding that the suppliers were not so remote as to be precluded from protection under the statute (*Wichita Sheet Metal Supply, Inc. v. Dahlstrom & Ferrell Constr. Co.*, 14 Kan. App. 2d 111, 783 P.2d 353 [1989]). The matter is before us on petition for review.

The relevant facts may be summarized as follows.

In 1986 the City of Leavenworth entered into a contract with Dahlstrom & Ferrell Construction Company, Inc., (D&F) for the construction of a community center. D&F provided a public works bond as required by K.S.A. 60-1111. This bond was secured through United States Fidelity and Guaranty Company, Inc. (USF&G).

In 1987 D&F subcontracted with High Tech Construction, Inc., (HTC) for certain mechanical work on the project. HTC, in turn, subcontracted with ACI, Inc., for this same work. ACI ordered supplies from Wichita Sheet Metal Supply, Inc., (WSM) and Air Moving Equipment, Inc., (AME) which were allegedly delivered to and incorporated into the project.

In 1988, ACI filed a bankruptcy petition. WSM and AME had not been paid for the materials provided and, separately, filed actions seeking recovery under the public works bond in effect

herein. Summary judgment was granted in each action in favor of D&F and USF&G. The cases were consolidated on appeal.

K.S.A. 60-1111(a) and (b) provide:

"(a) Except as provided in subsection (c), whenever any public official, under the laws of the state, enters into contract in any sum exceeding $10,000 with any person or persons for the purpose of making any public improvements, or constructing any public building or making repairs on the same, such officer shall take, from the party contracted with, a bond to the state of Kansas with good and sufficient sureties in a sum not less than the sum total in the contract, conditioned that such contractor or the subcontractor of such contractor shall pay all indebtedness incurred for labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of such public building or in making such public improvements.

"(b) The bond required under subsection (a) shall be approved by and filed with the clerk of the district court of the county in which such public improvement is to be made. When such bond is filed, no lien shall attach under this article, and if when such bond is filed liens have already been filed, such liens shall be discharged. Any person to whom there is due any sum for labor or material furnished, as stated in the preceding section, or such person's assigns, may bring an action on such bond for the recovery of such indebtedness but no action shall be brought on such bond after six months from the completion of said public improvements or public buildings."

K.S.A. 60-1101 provides:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same. The lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien. When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them."

K.S.A. 1989 Supp. 60-1103(a) provides:

"Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, subcontractor or owner contractor may obtain a lien for the amount due in the same manner and to the same extent as the original contractor . . . ."

The trial court held that under K.S.A. 60-1101 and K.S.A. 1989 Supp. 60-1103(a) lien protection is afforded to those in privity with the owner, contractor, or subcontractor to the contractor. The trial court further held that only those having lien rights had protection under a K.S.A. 60-1111 public works bond. As neither WSM nor AME were within such classification, they had no claim under the public works bond. The trial court's judgment relies upon and is consistent with our holdings in *J. W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 758 P.2d 738 (1988).

The Court of Appeals reversed the trial court. In so doing, it held:

1. Privity with the owner, contractor, or first-tier subcontractor is not required for protection under a public works bond. There is language in *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241, 662 P.2d 1195 (1983), supportive of this conclusion. The protection is not extended ad infinitum but only to those who are not too remote. A supplier to a second tier or sub-subcontractor is not too remote to be protected. What is "too remote" is not defined.

2. Summary judgment was inappropriate as a material fact remained in dispute.

Before proceeding to the main issue, it should, perhaps, be noted that D&F's bond limited liability thereto to those in privity with D&F or a subcontractor of D&F. It specifically stated that only those having mechanics' lien rights were protected by the bond. In its contract D&F stated that each subcontractor would be required to post a public works bond. This provision was not enforced as to HTC but that fact has no bearing on this litigation. The Court of Appeals correctly held:

"When a statute requires a bond to be given, the statutory terms and conditions will be read into the bond and conditions not required by statute will be stricken from the bond as surplusage. *Stevens v. Farmers Elevator Mutual Ins. Co.*, 197 Kan. 74, 78, 415 P.2d 236 (1966)." 14 Kan. App. 2d at 116.

If privity with the contractor or a subcontractor of the contractor is a requisite to protection under the public works bond statute, then the bond herein was in proper form. If the protection afforded is extended to a broader class by the statute, then such

broader class cannot be denied protection by restrictive language in the bond. This result is consistent with what we said about similar provisions contained in the public works bond involved in *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241. The language used in the bond is, accordingly, not controlling herein.

One further point needs to be made. The protection required by the statute controls over the language of the bond only where the bond contains language purporting to provide less than the statutorily mandated protection. If the bond provides greater protection than is required by the statue, then the language of the bond is controlling. Put another way, the statute sets forth the minimum protection required to be provided in a public works bond.

We turn now to the conflict between *J. W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503 (relied on by the trial court), and *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241 (relied on by the Court of Appeals).

In *Thompson*, Penta Construction Company, Inc., (Penta) had a contract with the City of Wichita to construct a large sewage treatment container called a "digester." Penta signed a purchase order with Welles whereby Welles was to provide the floating cover for the digester which was to be built to order at Welles' facility and delivered to the site for installation. Welles ordered certain components for the floating cover from J. W. Thompson Co. Welles was required to provide an inspector at the job site to check Penta's installation of the cover. Thompson was only partially paid by Welles for the components it supplied. The crucial issue was whether Welles was a subcontractor or a supplier. If Welles was a subcontractor, then Thompson was a supplier of materials to a subcontractor and protected by the public works bond. If Welles was a supplier of materials then Thompson was a supplier to a supplier and not protected by the bond. We held that Welles was a supplier.

Specifically, we held:

"In Kansas, contractors' bonds on public works projects filed pursuant to K.S.A. 60-1111 are substitutes for mechanics' liens. Contractors' bonds are for the use of all persons in whose favor liens might accrue."

"In general, it is appropriate to analogize rules applicable to mechanics' liens to contractors' public works bonds."

"Suppliers of equipment and material to contractors and subcontractors come within the purview of the protection afforded by mechanics' liens and contractors' public works bonds. Suppliers to suppliers (remote suppliers) are not within the purview of such statutes." 234 Kan. 503, Syl. §§ 2-4.

The clear holding of *Thompson* is that, in order to claim protection under a public works bond, the claimant must first establish that it is within a class in whose favor liens might accrue. The public works bond operates as a substitute for mechanics' liens and does not broaden the class entitled to protection.

*Thompson* is in conflict with some language contained in *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241, as previously stated. The relevant facts in *Arrowhead* may be summarized as follows. The City of Lakin contracted with Essex Corporation for the latter to build some low-income housing units. Essex entered into a subcontract with Heritage Construction Management Company which, in turn, entered into a subcontract with Arrowhead Construction Company. Arrowhead then contracted with Frank Crotts and Glenn Henley to perform some of the carpentry work (on a contract basis and not as employees). During the course of construction, Heritage became dissatisfied with Arrowhead's performance and replaced the firm with another for job completion. Arrowhead, Crotts, and Henley each filed mechanics' liens. The liens were discharged by stipulation and the claimants pursued payment from the bond of Essex. They had the legal status of third-tier subcontractors—having a contract with a second tier or sub-subcontractor. The trial court held Crotts and Henley could recover on the bond. The facts of the case skew some of its holdings as the trial court was ultimately affirmed on the basis of estoppel—this arising from some stipulations relative to the nature of the bond whose inclusion herein would only add confusion.

In any event, this court held in Syl. ¶ 1:

"A statutory public works bond, in accordance with K.S.A. 60-1111, applies to 'all indebtedness' incurred in making public improvements. Such a bond acts to discharge all liens filed in connection with the construction of public improvements."

The corresponding portion of the opinion states:

"A statutory public works bond has two characteristics which are important to a discussion of this issue. First, such a bond applies to 'all indebtedness'

incurred in making public improvements. Thus, no privity with the general contractor is required. Second, such a bond, properly filed, acts to discharge all liens filed in connection with the construction." 233 Kan. at 246.

The bulk of the opinion is devoted to the stipulation and its legal effect and whether or not there was a valid contract between Arrowhead and the claimants Crotts and Henley. The Court of Appeals, in its opinion in the case before us, leapt upon the quoted language concerning there being no requirement for privity with the general contractor and that the bond applies to "all indebtedness." It made some modifications, however, "all indebtedness" was construed to be limited to some undefined "not so remote" test. Privity was not wholly abandoned but construed to include a subcontract with other than the general contractor or the first-tier subcontractor as long as it was "not so remote."

The *amicus curiae* brief filed herein by The Associated General Contractors of Kansas, Inc., points out some serious problems that will arise if the Court of Appeals opinion is affirmed. They are summarized as follows:

1. Present bond rates are set on the basis of exposure, which has heretofore been limited to those having lien rights—that is, they are in privity with the owner, contractor, or a subcontractor of the contractor.

2. A public works bond is not like an insurance policy in that the bond purchaser agrees to indemnify the bond issuer for all claims paid.

3. Bonding capacity is an important aspect of a contractor's business. The owner of such a business is usually required to sign a personal indemnity agreement. Expanding the list of classifications covered by the bond will reduce the bonding capacity of the business and eliminate many companies from bidding on public works projects.

4. It will be impossible for a general contractor and its subcontractor to protect themselves as they have no means of determining who potential claimants are.

As long ago as 1896 this court stated that mechanics' lien rights could not be judicially expanded and recognized the hazards of indefinite extension. *Nixon v. Cydon Lodge*, 56 Kan. 298, 43 Pac. 236 (1896). The hazards are far greater today with our society's

ever increasing specialization in the manufacturing of products and the performance of services.

Generally, a business extends credit based upon its evaluation of its customer's ability to pay. It may decline to extend credit, require advance payment, deliver on a C.O.D. basis, require the ultimate consumer to issue a two-party check, or take other appropriate steps to protect itself. The protection afforded by mechanics' liens is legislatively granted to those within a well-defined area—those in privity with the owner, contractor, or subcontractor to the contractor. If this area of protection is to be extended it is a matter of legislative rather than judicial action, as a number of competing public interests are involved. This is at least as true in the area of public works bonds which are substitutes for mechanics' liens.

After careful consideration, we adhere to our decision in *J. W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503. Public works bonds provide protection to only those individuals or businesses in whose favor lien rights might accrue. The two claimants herein are suppliers of materials to a sub-subcontractor. As such they are not in privity with the owner, contractor, or subcontractor to the contractor and have no lien rights. They, therefore, are afforded no protection under the public works bond herein. Any language contained in *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241, which is inconsistent or contrary to this opinion is disapproved.

We turn now to the remaining issue. The Court of Appeals further held that summary judgment was inappropriate as to the claim of AME as it was a controverted material fact whether or not an oral contract existed between AME and the general contractor (D&F) by virtue of the usage of trade. We do not agree.

The president of AME filed an affidavit in which he stated, *inter alia,* that ACI (the sub-subcontractor) ordered goods from it which were sent directly to the job site and that he had answered some unspecified questions about those goods propounded by some unspecified person from High Tech Construction, Inc. (the subcontractor). The Court of Appeals held that whether this constituted the formation of an oral contract between AME and the general contractor (D&F) had to be determined under the usage of trade concept.

K.S.A. 84-1-205(2) provides:

"A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court."

The Official UCC Comment on the usage of trade provision states:

"4. This Act deals with 'usage of trade' as a factor in reaching the commercial meaning *of the agreement which the parties have made.* The language used is to be interpreted as meaning what it may fairly be expected to mean to parties involved in the particular commercial transaction in a given locality or in a given vocation or trade. By adopting in this context the term 'usage of trade' this Act expresses its intent to reject those cases which see evidence of 'custom' as representing an effort to displace or negate 'established rules of law.' A distinction is to be drawn between mandatory rules of law such as the Statute of Frauds provisions of Article 2 on Sales whose very office is to control and restrict the actions of the parties, and which cannot be abrogated by agreement, or by a usage of trade, and those rules of law (such as those in Part 3 of Article 2 on Sales) which fill in points which the parties have not considered and in fact agreed upon. The latter rules hold 'unless otherwise agreed' but yield to the contrary agreement of the parties. Part of the agreement of the parties to which such rules yield is to be sought for in the usages of trade which furnish the background and give particular meaning to the language used, and are the framework of common understanding controlling any general rules of law which hold only when there is no such understanding." (Emphasis supplied.)

Clearly, usage of trade is limited to explaining language used in an existing contract or filling in some gap in the contract. It cannot be used to create a contract where none previously existed. AME, by its own admission, sold its goods to ACI. There is no claim that usage of trade is needed to determine the rights and obligations between AME and ACI. AME is attempting to create some new ex post facto contract with another party through usage of trade. There is nothing before us to warrant such a novel application of usage of trade.

Before closing, we wish to compliment the trial court on its thorough and well-reasoned opinion.

The judgment of the Court of Appeals is reversed, and the judgment of the district court is affirmed.

SIX, J., not participating.