**BRB CONTRACTORS, INC., Plaintiff,**

v.

**AKKERMAN EQUIPMENT, INC.; United States Fidelity and Guaranty Company; and American Tunnelling, Inc., Defendants.**

**AKKERMAN EQUIPMENT, INC., Third–Party Plaintiff,**

v.

**SIEBEN CONTRACTING COMPANY, INC. and United States Fidelity and Guaranty Company, Third–Party Defendants.**

Civil Action No. 95–4063–DES.

United States District Court, D. Kansas.

July 1, 1996.

As Corrected Oct. 4, 1996.

Edward L. Bailey, John T. Houston, Cosgrove, Webb & Oman, Topeka, KS, for BRB Contractors, Inc.

J. Michael Grier, Jeffrey A. Kennard, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, John S. Beckmann, Austin, MN, for Akkerman Equipment, Inc.

Robert A. Babcock, James S. Kreamer, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, Carol Zuschek Smith, Bruce B. Waugh, Gilliland & Hayes, P.A., Kansas City, MO, for United States Fidelity and Guaranty Company.

J. Michael Grier, Jeffrey A. Kennard, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, for Akkerman Equipment, Inc.

Robert A Babcock, James S. Kreamer, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for Sieben Contracting Company, Inc.

Robert A. Babcock, James S. Kreamer, Baker, Sterchi, Cowden & Rice, L.L.C., for United States Fidelity and Guaranty Company.

## *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on the Motion for Summary Judgment (Doc. 77) by United States Fidelity and Guaranty Company ("USF & G") in response to the Amended Third–Party Complaint (Doc. 39) by Akkerman Equipment Company, Inc. ("Akkerman") against USF & G.

## I. BACKGROUND

The following are what the court finds to be the uncontroverted facts relevant to USF & G's summary judgment motion.

The Johnson County Unified Waste Water District awarded five contracts for the construction of the Mill Creek Regional Main Sewer District No. 1. One of the contracts, Contract No. 3–1, provided for the construction of the Little Mill Creek interceptor and four branch sewer lines.

Sieben Contracting, Inc. ("Sieben") submitted the lowest bid and was awarded the main sewer contracts which included construction of the Little Mill Creek Project.

On September 24, 1993, USF & G, as surety, issued a Statutory Bond to the State of Kansas naming Sieben as principal. The bond is in the penal sum of $5,513,000.

In approximately October 1993, a representative of American Tunnelling, Michael L. Smith, approached Akkerman and requested a bid for the design, manufacture, and lease of a tunnel boring machine for use on the Little Mill Creek Project.

On November 2, 1993, Sieben entered into a subcontract with American Tunnelling to perform the tunnelling work on the Little Mill Creek Project.

On January 26, 1994, Akkerman issued a written quotation to American Tunnelling for the lease of a tunnel boring machine. The quotation stated that American Tunnelling could lease the machine from Akkerman at a rate of $59,600 for the first month, plus $50,100 for each additional month.

In the summer of 1994, American Tunnelling advised Akkerman that it was experiencing financial difficulties and, therefore, could not lease the tunnel boring machine from Akkerman. American Tunnelling also advised Akkerman that it was preparing to enter into an agreement with BRB Contractors, Inc. ("BRB") for BRB to lease the boring machine from Akkerman.

In August 1994, American Tunnelling entered into a contract with BRB Contractors, Inc. to perform the tunnelling work on the Little Mill Creek Project. The agreement was entitled "Subcontract Agreement."

Throughout the Subcontract Agreement between BRB and American Tunnelling, BRB is referred to as a subcontractor of American Tunnelling. The subcontract agreement was drafted by Mike Welch, President of BRB, and forwarded to Lisa Bongino, President of American Tunnelling, for her review. On the same day that BRB entered into the agreement with American Tunnelling (August 17, 1994), BRB also entered into a written contract with Akkerman for the lease of a tunnel boring machine and related equipment.

Under the terms of the "Subcontract Agreement," BRB agreed to provide all major equipment and supplies required on the Little Mill Creek Project. American Tunnelling agreed to supply a crew of laborers and the technical know-how necessary to complete the project. BRB paid the payroll and related employment taxes for American Tunnelling's crew.

American Tunnelling's subcontract with Sieben prohibits the assignment of any monies due American Tunnelling under the agreement without the written consent of Sieben. Sieben was never asked and never agreed to an assignment of monies between American Tunnelling and BRB.

On or about August 17, 1994, BRB and Akkerman entered into a lease agreement for use of Akkerman's tunnel boring machine on the project. American Tunnelling was not a party to the lease of the Akkerman tunnel boring machine for use on the Little Mill Creek Project. BRB and Akkerman are the only parties to the lease agreement.

In Akkerman's Amended Third–Party Complaint, it is alleged that John Notermann, an employee of Akkerman, contacted an employee of USF & G, Scott Guest, to inquire as to whether Akkerman would be covered under the bond if it supplied the tunnel boring machine to the project. The phone conversation between John Notermann and Scott Guest occurred on August 3, 1994, during which Mr. Noterman did not advise Mr. Guest to whom the tunnel boring machine would be supplied. Mr. Guest was not told if the machine was being supplied to Sieben, American Tunnelling, BRB or to any other entity. At this point, negotiations be-

tween Akkerman and BRB for the lease of the tunnel boring machine had not yet commenced.

## II. DISCUSSION

### A. The standard for summary judgment

■ A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

■ The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

■ A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues").

The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

### B. Was Akkerman covered by the bond?

Akkerman claims to be entitled to recover under USF & G's public works bond. The controlling statute in this instance is K.S.A. § 60–1111, which provides that contractors performing public works construction projects valued at $10,000 or more must provide a surety bond for an amount not less than the total sum of the contract, "conditioned that such contractor or the subcontractor of such contractor shall pay all indebtedness incurred for labor furnished, materials, equipment of supplies used or consumed in connection with or in or about the construction of such public building or in making such public improvements." Kan.Stat.Ann. § 60–1111(a). The language of the statute speci-

fies that it applies to contractors or the sub-contractor(s) of such contractors.

■ "[I]t is appropriate to analogize rules applicable to mechanics' liens to K.S.A. 60–1111 public works bonds." *Wichita Sheet Metal Supply, Inc. v. Dahlstrom & Ferrell Constr. Co.*, 246 Kan. 557, 792 P.2d 1043, 1044 (1990). In essence, "public works bonds are substitutes for mechanics' liens." *Id.* "Mechanics' lien rights accrue to those in privity with the owner, contractor, or subcontractor with the contractor." *Id.* Accordingly, in order for Akkerman to fall under the public works bond provided by USF & G, Akkerman "must establish [it] is one in whose mechanics' liens might accrue." *Id.*

Sieben was the general contractor on the Little Mill Creek Project. Sieben entered into a contract with American Tunnelling to perform the tunnel work on the Little Mill Creek Project. As such, American Tunnelling's status was as a subcontractor to Sieben. American Tunnelling subsequently entered into an agreement with BRB to perform the tunnelling work. Whether BRB thereby became a sub-subcontractor or a joint venturer with American Tunnelling is the critical issue.

■ "Suppliers of material to a second tier or sub-contractor are not within the purview of the protection afforded by mechanics' liens and contractors' public works bond." *Id.*

Akkerman characterizes the agreement between American Tunnelling and BRB as a joint venture, rather than a subcontract. That puts American Tunnelling in privity with BRB as a subcontractor and allows for Akkerman to make a claim under the public works bond posted by USF & G.

The contract between American Tunnelling and BRB is clearly labeled "Subcontract Agreement." Throughout the document, BRB is referred to as a "subcontractor." There is no reference to or discussion of a joint venture agreement in the Subcontract Agreement.

It is well established that the party claiming the existence of a joint venture has the burden of proof. *Nature's Share, Inc. v. Kutter Products, Inc.*, 752 F.Supp. 371 (D.Kan.1990).

■ Akkerman offers compelling argument as to why BRB should be viewed as a joint venturer with American Tunnelling rather than a sub-subcontractor. First, BRB and American Tunnelling worked together to complete the work required on the Little Mill Creek Project. American Tunnelling supplied a crew of laborers and the technical know-how necessary to complete the project. BRB supplied equipment and financial resources, including the payroll for American Tunnelling's crew. Michael Smith, a member of the American Tunnelling crew which was paid by BRB, ordered additional equipment and materials from Akkerman for use on the Little Mill Creek Project. Also, the agreement between American Tunnelling and BRB called for the two companies to split all gross profits from the project equally.

The court also notes that BRB claims that American Tunnelling sought a joint venture arrangement:

> Meanwhile, in July and August of 1994, American Tunnelling contacted BRB with whom American Tunnelling had had a subcontract relationship previous to this construction. American Tunnelling asked BRB to *joint venture* the project, as had been done in the past, and front the expenses of the TBM (tunnel boring machine) with the net profits to be divided between the parties. BRB thence commenced an investigation of the feasibility of such a project. (emphasis added).[1]

Further, in its Amended Complaint (Doc. 25) BRB states that "American [Tunnelling] approached BRB and proposed a partnership between BRB and American for the Little Mill Creek Project." The description of the case provided by BRB and the relationship BRB describes in its complaint support Akkerman's assertions that BRB and American Tunnelling were joint venturers. It is a gen-

---

**1.** Plaintiff BRB Contractors, Inc.'s Response to Defendant and Third–Party Plaintiff Akkerman Equipment, Inc.'s Motion for Summary Judgment on Counts I and II of Plaintiff BRB Contractors, Inc.'s Amended Complaint and on its Counterclaim against Plaintiff. (Doc. 79, pp. 2–3)

uine issue of material fact which must be submitted to the trier of fact.

**IT IS THEREFORE ORDERED BY THE COURT** that United States Fidelity and Guaranty Company's Motion for Summary Judgment (Doc. 77) is hereby denied.