**ISLAND DIRECTORY COMPANY, INC.**, a Hawaii corporation, Plaintiff–Appellee, v. **IVA'S KINIMAKA ENTERPRISES, INC.**, a Hawaii corporation, and **IVA KINIMAKA** dba **IVA'S KOMPLETE KATER-ING**, Defendants–Appellants

NO. 15756

(CIV. NO. H89–2610)

October 14, 1993
(Amended by Order Dated January 28, 1994)

BURNS, C.J., HEEN, AND WATANABE, JJ.

16

## OPINION OF THE COURT BY WATANABE, J.

Iva's Kinimaka Enterprises, Inc., a Hawaii corporation, and Iva[1] Kinimaka (Iva) dba Iva's Komplete Katering (collectively, Defendants) appeal from the January 22, 1991 judgment of the District Court of the First Circuit, which concluded that Defendants had breached a contract to purchase advertising space in the "Yellow Pages" telephone directory published by Island Directory Company, Inc. (Plaintiff). We conclude that Plaintiff fraudulently induced Iva to sign the contract and is therefore precluded from enforcing it. We accordingly reverse.

### FACTS AND PROCEDURAL HISTORY

Before publishing its annual "Yellow Pages" telephone directory, GTE Hawaiian Telephone Company (GTE) routinely contacts all clients who had advertised in its previous year's directory to determine if they are interested in renewing, cancelling, or modifying their advertisements for the following year. Because the catering services of "Iva's Komplete Katering" had been advertised in GTE's Yellow Pages for the previous five years, Iva, who was also the president of the corporate entity, had been contacted by GTE about renewing the advertisement and was expecting a personal visit from a GTE sales representative. Coincidentally, a sales representative from Plaintiff, which publishes a telephone directory similar to GTE's, went to Iva's place of business soon thereafter to solicit advertisements.

---

[1] Iva Kinimaka testified that his legal given name is "Ivar." However, he goes by the name "Iva." 4/12/90 Transcript at 8–9.

According to Iva, when Plaintiff's sales representative arrived at his office, the representative identified herself as being "from the yellow pages." 4/12/90 Transcript at 78. Thinking that the representative worked for GTE, Iva agreed to meet with her. Plaintiff's sales representative picked up a GTE Yellow Pages directory, and she and Iva proceeded to a lounge area to discuss the advertisement. After agreeing to some wording changes, Iva received an important telephone call. While Iva was still conversing on the telephone, Plaintiff's sales representative placed a document entitled "Application for Advertising" in front of Iva, which Iva, without reading, signed. Plaintiff's sales representative then left the premises and was gone before Iva had gotten off the telephone. *Id.* at 78–81. Plaintiff now claims that the document which Iva signed was a non–cancellable contract for advertisement in Plaintiff's directory.

Iva discovered that he had been dealing with a company other than GTE about two days later, when he received a call from the GTE representative he had originally been expecting. Although Iva wanted to contact the sales representative for Plaintiff, with whom he had dealt earlier, Iva had no way of knowing who the representative was or where she worked, since Plaintiff's representative had left no business card and no copy of the document Iva had signed. Iva also checked the telephone listings for a "yellow pages" company, but the only telephone number listed was no longer in service. *Id.* at 82, 86.

Iva heard nothing from Plaintiff for several months. Then, on or about October 29, 1987, he received a "proof" of the advertisement he had allegedly contracted for, with instructions to make necessary corrections to the proof and return the same to Plaintiff by November 11, 1987.

*Id.* at 86–87. Iva was advised that if the proof were not returned, the advertisement would be printed as shown.

On November 2, 1987, Iva returned the proof, with the following note handwritten directly on the proof:

> To Whom It May Concern —
> I wish to cancel this advertisement with your company.
>
> Your sales representative had mislead [sic] me to believe that this was the GTE Yellow Pages.
>
> I was also represented by a GTE Sales Representative who informed me that this (your) company is not affiliated with the telephone company (Hawaiian Telephone), therefore, all of the above advertisement should be cancelled immediately.
>
> For the past two years I have used the GTE Yellow Pages.
>
> Yours Truly,<br>Iva Kinimaka, Pres.

Defendants' Exhibit B.

Iva did not hear from Plaintiff again until February 1988, when he received an undated letter advising him that his cancellation request had been rejected and that the contract balance for the advertisement was due and payable. Defendants' Exhibit C. Iva refused to pay for the unintended advertisement, prompting Plaintiff to file the instant lawsuit.

Following a trial held on April 12 and 27, 1990, the District Court of the First Circuit entered a judgment in Plaintiff's favor for the amount of $5,132.06. The court initially granted Defendants' subsequent motion to amend or alter judgment, or in the alternative, for a new trial, but a few months later, set aside its order and reinstated the judgment.

20

Defendants timely appealed, arguing that: (1) the trial court improperly admitted into evidence the alleged contract between Plaintiff and Defendants because the document was hearsay and no foundation was laid for its admission; (2) the parties did not enter into a valid and enforceable contract because there was no mutual assent and no valid acceptance; (3) there was no valid contract because of the misrepresentation of Plaintiff's sales representative; (4) there was no valid contract because Iva mistakenly believed that he was negotiating with GTE; (5) Plaintiff failed to mitigate damages by cancelling the advertisement before the directory was published; and (6) there was insufficient evidence to sustain the judgment against both Iva, individually, and the corporate defendant.

## DISCUSSION

### I.

### Admissibility of the Document Iva Signed

At trial, Plaintiff was allowed to introduce into evidence, through Mr. James Smith, Plaintiff's credit and collection manager, the written document which Iva admitted signing without reading. Defendants contend that the document should never have been admitted into evidence because it was inadmissible hearsay and no foundation had been laid for its introduction as a business record. This argument is without merit.

The Hawaii Rules of Evidence (HRE) define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 801(3). This definition is identical to that contained in the Federal Rules of Evidence (FRE) Rule 801(c). The

Notes of the Advisory Committee on FRE Rule 801(c) explain that:

> The definition follows along familiar lines in including only statements offered to prove the truth of the matter asserted. . . . *If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. . . . The effect is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.*

FED. R. EVID. 801 advisory committee's note (citations omitted; emphasis added).

It is well–settled that in a suit for breach of contract, the contract allegedly breached is not hearsay and is thus admissible into evidence. 2 C. McCORMICK, McCORMICK ON EVIDENCE, § 249 at 101 (4th ed. 1992); M. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6705 at 395–97 (interim ed. 1992) (statements constituting contracts fall outside the category of hearsay since the statement itself, the verbal act, has legal significance); ***West Coast Truck Lines, Inc. v. Arcata Comm. Recycling Center, Inc.***, 846 F.2d 1239, 1246, n.5 (9th Cir.), *cert. denied,* 488 U.S. 856, 109 S. Ct. 147, 102 L. Ed. 2d 119 (1988) (evidence of oral agreement is admissible because it is well–established that statements which may themselves affect the legal rights of the parties are not considered hearsay under the FRE (citing FRE Rule 801(c) advisory committee's note)); ***Thomas C. Cook, Inc. v. Rowhanian***, 774 S.W.2d 679, 685 (Tex. App. — El Paso 1989) ("[s]tatements that constitute offer, acceptance, or

terms of a contract — so called 'operative facts' — are not hearsay; the making of such statements are in themselves relevant and thus evidence that such statements were made is not barred by the hearsay rule").

In the instant case, the written document was not offered into evidence to prove the truth of its contents, but to prove that it was made, signed by Iva, and expressed the legal relationship of the parties. The document which Iva signed admittedly without reading is highly relevant because its legal effect is at issue in this case. Thus, the document was not hearsay and was properly admitted into evidence by the trial court.

## II.

### Validity and Enforceability of the Alleged Contract

According to Defendants, the trial court reversibly erred in concluding that a valid and enforceable contract existed between the parties.

Defendants argue that no mutual agreement as to the essential terms of a contract was ever reached by the parties because when Iva signed the document entitled "Application for Advertising Services," the document was blank and did not include any terms regarding price, consideration, or time of performance. Furthermore, Plaintiff never notified Defendants that their application for advertising services had been accepted.

Defendants also claim that due to the fraudulent misrepresentations of Plaintiff's sales representative, Iva was induced into mistakenly believing that he was negotiating a contract with GTE. Therefore, if a contract between the parties existed, it should be voided or vitiated.

## A. Whether a Contract Existed Between the Parties

Whether or not the parties entered into an agreement is essentially a question of fact. *Manchester Pipeline Corp. v. Peoples Natural Gas*, 862 F.2d 1439, 1445 (10th Cir. 1988); *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241, 662 P.2d 1195, 1201 (1983), *disapproved on other grounds by Wichita Sheet Metal Supply, Inc. v. Dahlstrom and Ferrell Constr. Co.*, 246 Kan. 557, 792 P.2d 1043 (1990), and *Shade v. Wheatcraft Industries, Inc.*, 248 Kan. 531, 809 P.2d 538 (1991); *Segura v. Molycorp, Inc.*, 97 N.M. 13, 18, 636 P.2d 284, 289 (1981); *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees*, 681 P.2d 1326, 1330 (Wyo. 1984). On appeal, a trial court's finding that a contract existed will not be disturbed unless it is clearly erroneous. *Waugh v. University of Hawaii*, 63 Haw. 117, 132, 621 P.2d 957, 969 (1980). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Kim v. State*, 62 Haw. 483, 493, 616 P.2d 1376, 1382 (1980)).

Reviewed under this standard, we find no reversible error in the trial court's finding that a contract had been entered into by the parties.

Iva testified that he and Plaintiff's sales representative discussed the advertisement for "[a]pproximately about 20 to 30 minutes," and agreed that the new advertisement would be larger and there would be some changes to the wording of the previous advertisement. 4/12/90 Transcript at 80. Iva also conceded that he signed the written document which Plaintiff's representative put

before him without reading it or discussing prices, even though to the best of his recollection, "all the typewritten and the handwritten portions weren't on it." *Id.* at 83.

The document signed by Iva, which was introduced into evidence as Plaintiff's Exhibit 1 at trial, was a pre-printed form entitled "APPLICATION FOR ADVERTISING." Computer–printed at the top of the form were the name, address, and telephone number of Plaintiff, who was identified as "Publisher." Near the top left corner of the form in a blank space following the word "APPLICANT:" was computer–printed:

> Iva's Komplete Katering
> 979 Robello Lane
> Honolulu

Also computer–printed on the form were various classifications of advertising services. At the left of each classification, the individual rates for each classification of service were handwritten in ink and at the bottom of the form, these rates were totaled, tax was added, and a total amount of $3,677.85 was penned in next to a block labeled "BALANCE DUE." Iva signed the form as "President" for the "Applicant," right below a statement that read:

> The applicant promises to pay to the order of: ISLAND DIRECTORY or its assigns the annual sum of $3677.85 payable as follows: $ –0– with this application and . . . 12 monthly installments of $306.48 beginning June 1988.

> The applicant, acting through the undersigned, who represents that he is duly authorized by the applicant, agrees to the payments stated above. The undersigned has read this application including the terms and conditions on the reverse side, and by his signature acknowledges that he has

received a copy of this application and agrees to the terms and conditions as stated. The applicant understands and agrees that this contract is subject to acceptance by the home office of the publisher. All payments to the publisher hereunder shall be made at its corporate offices. **This agreement cannot be cancelled except as stated herein.**

"D. Holifield" signed the document as "Representative" for Plaintiff.

Preprinted on the back of the form were fifteen "Terms and Conditions," including the following, which are relevant to this dispute:

1.   This application will become a contract when signed by the advertiser and accepted by the publisher. This contract contains the entire agreement between the parties hereto for the forthcoming issue and subsequent issues and cannot be changed, altered or cancelled except by written agreement signed by all parties hereto. Neither party shall be bound by any oral agreements or special arrangements contrary to or in addition to the terms and conditions as stated herein or written hereon, and no agent or employee of publisher has the authority to vary any of the terms of this application.

2.   The directory advertising specified on the face of this contract is for insertion in the directory issue as indicated and the advertiser agrees to pay the charges as indicated on the face of this contract, plus all state and local taxes attributable thereto. Advertiser also agrees to reimburse

publisher for any expense incurred during the interim in the event of a cancellation.

Below the terms and conditions, in one–fourth inch bold print, were the words: "This is not a telephone company publication."

If Iva had taken the time to read through the document, he would have realized that he was signing a contract. Based on the record, we cannot conclude that the trial court erred in finding that a contract existed between the parties.

## B. Voidability of Contract

Having established that a contract existed between the parties, we must now determine whether the contract is voidable because the alleged misrepresentation by Plaintiff's sales representative caused Iva to believe that he was signing an advertising contract for the GTE Yellow Pages, not Plaintiff's yellow pages.

The Hawaii Supreme Court has recognized that where execution of a contract is obtained by fraud, deceit, or misrepresentation, the contract may be avoided by the party who was misled. In *Cummins v. Cummins*, 24 Haw. 116 (1917), for example, the supreme court stated:

> There is a strong present day tendency by the courts as well as the text writers to require the utmost good faith by all the parties concerned in a transaction of this nature even though they be strangers to each other and even when no trust or confidential relations exist between them. The law recognizes in many circumstances the right of a man to rely upon the statements of another. There is indeed a strong inclination on the part of

the courts to hold, without any qualification that a person guilty of fraudulent misrepresentation cannot escape the effects of his fault on the ground of the injured party's negligence.

"One of the largest classes of cases in which courts of equity are accustomed to grant relief is where there has been a misrepresentation or *suggestio falsi.*" 10 R.C.L. p. 323.

"Where the party intentionally or by design misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him; in every such case there is a positive fraud in the truest sense of the term." 1 Story, Eq. Jur., p. 189.

And a fraudulent misrepresentation, even though it relates only to a portion of a contract, furnishes a complete defense to an enforcement of the whole. See 2 Pomeroy, Eq. Jur., p. 387.

*Id.* at 120–21. *See also Kang v. Harrington*, 59 Haw. 652, 587 P.2d 285 (1978).

The instant case was tried before a district court, which has no equity jurisdiction. However, fraud is an affirmative defense in the district courts. Hawaii District Court Rules of Civil Procedure Rule 8(c). Therefore, fraud, if proved by Defendants, provides a complete defense to Plaintiff's breach of contract suit.

The standard for proving fraud or misrepresentation with respect to a written contract is extremely high, and a written contract will be cancelled only in a clear case of fraud or misrepresentation supported by clear and convincing evidence. *Kang v. Harrington*, 59 Haw. at 656–57, 587 P.2d at 289. In this case, the trial court found

28

that Defendants had not proved, by clear and convincing evidence, that the contract in question had been procured by fraud or misrepresentation.

A trial court's finding of fact will not be set aside on appeal unless clearly erroneous. *Waugh v. University of Hawaii, supra.* In this case, the evidence at trial revealed that Defendants had annually advertised their catering business in GTE's Yellow Pages for over five years. In August 1988, GTE contacted Iva to inquire whether Defendants would be renewing their advertising contract for another year. When Iva answered affirmatively, he was informed that a GTE sales representative would be scheduling an appointment with him soon to discuss the renewal. A woman sales representative from GTE thereafter attempted to call Iva for such purpose, but Iva had missed her telephone calls and had been unable to make contact with her.

While Iva was still waiting to hear from the GTE representative, Plaintiff's sales representative walked into Defendants' office without an appointment, announced to the receptionist that "she was with the yellow pages," then walked straight to Iva's desk and greeted him. 4/12/90 Transcript at 77, 4/27/90 Transcript at 18, 44. Plaintiff's sales representative did not hand out a business card or identify the name of her company, and gave both Iva and his receptionist the distinct impression that she was affiliated with GTE. 4/12/90 Transcript at 82, 4/27/90 Transcript at 48.

For example, Plaintiff's sales representative used Defendants' previous advertisement in the GTE Yellow Pages to propose modifications to the advertisement for the following year. She "tore out files" which Iva "saw with [his] own eyes of [his] prior previous contract with another

[GTE] salesperson," 4/27/90 Transcript at 18, and his receptionist also testified that she saw what she "assumed to be past paper work from [Iva's] GTE Yellow Pages." *Id.* at 48. Moreover, while Iva was on the telephone, Plaintiff's sales representative placed in front of Iva, for his signature, a document entitled "Application for Advertisement," which clearly bore in two locations on the front page, the distinctive GTE "let your fingers do the walking" logo. Iva testified that the document contained no typewritten or handwritten entries when he signed it, and he thought he was "just signing an application for advertising." 4/12/90 Transcript at 82. Iva also testified that he did not discuss any prices with Plaintiff's sales representative, and was never shown the back of the "Application for Advertising" form, which was entitled "Terms and Conditions" and which included at the very bottom, the statement: "This is not a telephone company publication." *Id.* at 83–84. Additionally, according to Iva, Plaintiff's sales representative did not leave him a copy of the "Application for Advertising," *id.* at 84, despite the fact that the following sentence appeared in small print at the bottom of the "Application": "The undersigned . . . by his signature acknowledges that he has received a copy of this application[.]" Plaintiff's Exhibit 1.

After Plaintiff's sales representative obtained Iva's signature, she immediately left the premises and was gone before Iva had gotten off the telephone. Since she left no business card or copy of the document Iva had signed, Iva had no way of contacting her when he realized a few days later that she was not with GTE.

Plaintiff did not controvert any of the foregoing evidence at trial. Plaintiff's sales representative could not be located to testify and Mr. James Smith, the only

employee of Plaintiff to testify, admitted that he had been working for Plaintiff for less than four months, and was unfamiliar with what had transpired between Iva and Plaintiff's sales representative. 4/12/90 Transcript at 27. Mr. Smith did admit, however, that the logo used by Plaintiff on its "Application for Advertising" appeared to be the same "let your fingers do the walking" logo used by GTE, but defended the practice, saying:

> We use that [logo] because it's an unprotected trademark, and many yellow page publishers use it. G.T.E. has no hold on that.

*Id.* at 44.

In our view, the uncontroverted evidence at trial clearly and convincingly shows that Plaintiff's sales representative purposely and fraudulently misled Iva into believing that he was contracting with a GTE representative. Consequently, our review of the evidence leaves us with a definite and firm conviction that the trial court made a mistake in finding that Defendants had failed to prove, by clear and convincing evidence, that Plaintiff procured the contract by fraud or misrepresentation.

Plaintiff's conduct in fraudulently inducing Iva to sign the contract is a complete defense to a claim brought under the contract. Accordingly, it is unnecessary for us to consider Defendants' other points on appeal, and the district court's judgment awarding Plaintiff damages for breach of the contract is reversed.

*Mark S. Kawata* (Tanaka & Kawata, attorneys at law, a law corporation, of counsel) on the briefs for defendants–appellants.

*Michael A. Lilly* and *Lynette T. Oka* (Green, Ning, Lilly & Jones, of counsel) on the brief for plaintiff–appellee.