**Electronically Filed
Supreme Court
SCWC-13-0000030
15-AUG-2017
08:09 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

ANTHONY R. VILLENA,
Petitioner/Defendant-Appellant.

_____

SCWC-13-0000030

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000030; CASE NO. 1DTA-12-01321)

AUGUST 15, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

This case arises from Petitioner/Defendant-Appellant

Anthony R. Villena's (Villena) conviction for the offense of

operating a vehicle under the influence of an intoxicant

(OVUII).  On appeal, Villena asserts the Intermediate Court of Appeals (ICA) erred in holding that the State laid a sufficient foundation to introduce the results of Villena's blood alcohol test results.  Specifically, Villena raises four grounds for the State's failure to lay a sufficient foundation for introduction into evidence of the blood test results:

> 1. Whether the ICA gravely erred in affirming the trial court's admission of Villena's blood alcohol test result without first requiring the State to (1) introduce its scientific evidence via a duly qualified expert; (2) prove satisfaction of the three Montalbo factors in arriving at the test result; and (3) demonstrate compliance with the Souza requirements for test results produced by an instrument;
>
> 2. Whether the ICA gravely erred in affirming the trial court's admission of Villena's blood alcohol test result without first requiring the State to demonstrate strict compliance with HAR §11-114-23(b) and (a)(3) requirements which have a direct bearing on the accuracy of the alcohol test result;
>
> 3. Whether the ICA gravely erred in affirming the trial court's admission of State's Exhibit#1 (the Letter License) as hearsay, inadmissible under either HRE 803(b)(6) or (8), and in violation of Villena's Confrontation rights; and
>
> 4. Whether the ICA gravely erred in ruling that the trial court's erroneous admission of State's Exhibit#2 (MT Perry's Sworn Statements) was mere harmless error.

We affirm the ICA's judgment and hold that the State laid a proper foundation to introduce the results of Villena's blood test because the State's licensing letter was admissible as nonhearsay.

2

## I. Background

### A. District Court Proceedings

On March 6, 2012, Villena was charged by complaint with OVUII, in violation of Hawaiʻi Revised Statutes (HRS) § 291E-61(a)(4) (2011).[1] Villena pled not guilty to the charge. The bench trial commenced on October 18, 2012, continued on December 6, 2012, and ended on December 19, 2012.[2]

### 1. Testimony of Officer Wade Ikehara

The State presented testimony from Honolulu Police Department (HPD) Officer Wade Ikehara that on February 22, 2012, he observed Villena driving at 75 miles per hour, 25 miles per hour over the speed limit of 50 miles per hour. Officer Ikehara next noticed that Villena's vehicle crossed over the dashed lines separating two of the lanes. Although Officer Ikehara activated his lights, Villena's vehicle did not stop until he reached a DUI roadblock. At the DUI roadblock, Officer Ikehara approached Villena's vehicle and noted that Villena's eyes were "red, bloodshot, and glassy," his appearance was disheveled, and

---

[1]    HRS § 291E-61(a)(4) (2011) provides:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

. . .

        (4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

[2]    The Honorable Clarence A. Pacarro presided.

he detected "a strong odor of an alcoholic type beverage on his breath." Defense counsel stipulated that Villena performed the field sobriety test and Officer Ikehara subsequently made the arrest. Villena was then transported to the Kalihi Police Station.

At the police station, Officer Ikehara read Villena an implied consent form and Villena elected to take a blood test. Because Villena selected that option, Officer Ikehara transported Villena to the Alapai Police Station to have his blood drawn. Officer Ikehara waited with Villena for 20-30 minutes until the arrival of medical technologist Karla Perry (Perry). Upon her arrival, Officer Ikehara listened to her explain the procedures and observed her withdraw blood from Villena.

2. **Testimony of Medical Technologist Karla Perry**

The State presented testimony from Perry. This testimony was presented out of order, prior to the completion of Officer Ikehara's testimony, due to Perry's scheduling conflicts.

Perry testified as to her qualifications as a medical technologist. She stated she was employed as a medical technologist with the City and County of Honolulu since 2004. She graduated from the University of Hawaiʻi at Mānoa with a bachelor of science in medical technology, was board certified

by the American Society of Clinical Pathologists, and was state certified by the state Department of Health (DOH).

Perry asserted that she was qualified under Hawaiʻi Administrative Rules (HAR) Title 11, chapter 114, which regulates blood alcohol testing, to draw blood and perform alcohol analysis.  Over defense counsel's objection for lack of foundation, the court allowed the State to lay additional foundation to support Perry's testimony.

The State sought to lay a foundation for Perry's qualification as a medical technologist under HAR Title 11, chapter 114.  Perry explained that Title 11 requires an alcohol analyst or supervisor to be a medical technologist licensed by the state.  With her bachelor of science degree and as a state-licensed medical technologist, Perry asserted that she fulfilled the requirement to be an alcohol analyst under HAR Title 11, chapter 114.  Perry also explained that she qualified as an alcohol testing supervisor because she fulfilled the sole requirement that she have four years of experience as an alcohol analyst.[3]

---

[3]     Perry's assertion that four years of experience is sufficient to be an alcohol testing supervisor was incorrect.  The minimum number of years of experience is five years.  HAR § 11-114-19(b)(3) (1993).  Nonetheless Perry was qualified to be a supervisor as she had eight years of experience at the time she tested Villena's blood sample.

To gain admission of the results of the blood alcohol test results, the State then attempted to introduce evidence to establish that the City and County of Honolulu Health Services Division Laboratory (Laboratory) where Perry worked was a licensed laboratory under Title 11.[4]  Defense counsel objected for lack of foundation.  Perry testified that she had personal knowledge that the Laboratory was licensed as of November 2011.  As the laboratory supervisor, Perry received a licensing letter from DUI coordinator Dr. Tam Nguyen stating that the Laboratory was licensed under HAR Title 11, chapter 114.  Perry testified that the letter was kept in the regular course of the

---

[4]   Under HAR Title 11, chapter 114, laboratories conducting alcohol tests are required to be licensed by the director of health.  A license is granted if the laboratory meets the following requirements:

> (1) Is physically located in this State;
>
> (2) Is licensed by the department as a clinical laboratory;
>
> (3) Has adequate facilities, personnel, equipment, and instrumentation;
>
> (4) Includes in its staff an alcohol testing supervisor who is qualified under section 11-114-19;
>
> (5) Uses alcohol testing procedures approved in writing by the DUI coordinator or previously approved by the director of health as required by section 11-114-22 and demonstrates proficiency in those procedures;
>
> (6) Has a quality assurance program approved in writing by the DUI coordinator which includes a chain of custody procedure; and
>
> (7) Participates in and meets the requirements of a performance evaluation program for alcohol testing approved in writing by the DUI coordinator as required by section 11-114-21 at no cost to the department.

**HAR § 11-114-18(b).**

Laboratory's business.  The State moved to enter the DUI coordinator's licensing letter, marked as State's Exhibit 1, into evidence in order to establish the reliability of the laboratory, methods, and instrument used to measure Villena's blood alcohol content.  Defense counsel objected on the basis of authentication, lack of foundation, hearsay, and violation of Villena's rights under the Confrontation Clause.  The court took the letter's admission into evidence under advisement.

Perry next testified regarding the enzymatic method used to analyze blood samples.  She testified that this method was approved by Dr. Tam Nguyen, the statewide DUI coordinator, in September 2009.  Over objections from defense counsel for lack of foundation, Perry stated that the enzymatic method is accepted in the scientific community as being accurate and reliable.

Perry identified the instrument used to test the blood samples as the "Ace Alera."  Again, over defense counsel's objection for lack of foundation, Perry stated that the Ace Alera was approved by the DUI coordinator.  Perry testified she was trained to calibrate and operate the Ace Alera by her then-supervisor in September 2009.  As part of her training, Perry reviewed the manufacturer's manual, which explained how to calibrate and operate the Ace Alera.  She testified that calibration is conducted by placing the reagents and the

appropriate samples on the instrument; once the instrument runs it informs the technician "whether it passed or failed." Perry testified that she calibrated the Ace Alera prior to testing the samples and the instrument passed.

Following Perry's testimony regarding the Ace Alera instrument's calibration, the State sought to prove Villena's blood alcohol content by introducing the blood test result measured by the Ace Alera. Perry testified that Villena's blood alcohol content was "0.16 grams of alcohol per 100 cubic centimeters of whole blood." Defense counsel objected to Perry's testimony on the basis that the State laid an insufficient foundation to introduce Villena's blood test result. Defense counsel also asserted that the State failed to demonstrate that the testing of Villena's blood was conducted in accordance with the requirements of HAR Title 11, chapter 114. The district court clarified that because Perry was testifying out of order, Perry was allowed to testify but the testimony and exhibits would not be admitted until the State established proper foundation through Perry and its other witnesses.

The State then sought to move into evidence the blood alcohol testing statement—marked as State's Exhibit 2—which contained Villena's blood alcohol content results of 0.16. The court took admission of the exhibit under advisement.

### 3. Admission of the DUI Coordinator's Licensing Letter

Following the testimonies of Officer Ikehara and Perry, the court heard argument as to the admission of the DUI coordinator's licensing letter and the blood alcohol testing statement.

As noted previously, the DUI coordinator's licensing letter is a letter to Perry, dated November 5, 2011, from the DUI coordinator. The letter states that it "constitutes a license for the City and County of Honolulu Health Services Division Laboratory to conduct blood alcohol testing in accordance with Hawaii Administrative Rules, Title 11, Chapter 114 (HAR-11-114)." The letter explains that the licensure of the Laboratory was based on the Laboratory "having fulfilled requirements of HAR-11-114-18(b)." In addition, the letter confirms that the Ace Alera instrument was approved "to be used for the determination of blood alcohol concentration." Specifically, the letter states that "[t]he addition of the ACE-ALERA Clinical Chemistry analyzer . . . to the 'Quantitative Enzymatic Determination of Alcohol' procedure[] has been evaluated" as meeting the requirements of HAR § 11-114-22. The letter bears the seal of the State of Hawaiʻi, states that it "is a true and correct copy of a public document on file in the Department of Health," and is signed by the DUI coordinator, who is also designated as the custodian of records.

The State argued that the DUI coordinator's licensing letter was admissible because it fell within two hearsay exceptions: HRE Rule 803(b)(6), as a record of a regularly conducted activity, and HRE Rule 803(b)(8), as a public record with a self-authenticating seal.[5]  Over defense counsel's arguments that neither of the hearsay exceptions applied and that admission of the letter would violate Villena's confrontation rights, the court admitted the DUI coordinator's

---

[5]     HRE Rule 803 (2012) provides in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(b) Other exceptions.

. . .

    (6) Records of regularly conducted activity.  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

. . .

    (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

licensing letter into evidence.  The State also sought to admit a blood alcohol testing statement containing a sworn statement from Perry that she followed applicable procedures in testing Villena's blood (the State's "Exhibit 2").  Over defense counsel's objections based on hearsay and lack of foundation, the court admitted the blood alcohol testing statement into evidence based on Perry's testimony.

### 4. Closing Arguments

In closing argument, the State argued it laid a sufficient foundation to admit the blood test result.  The State pointed to Perry's testimony, which demonstrated that the enzymatic method is an approved method and that Perry was trained in accordance with state regulations.  The State also referenced the DUI coordinator's licensing letter, which licensed Perry's Laboratory and confirmed the DUI coordinator's approval of the procedure and equipment used to test Villena's blood.  The State argued that Perry's testimony and the licensing letter were sufficient to lay an adequate foundation to introduce the blood test result.

Defense counsel argued that the State did not lay a sufficient foundation to introduce scientific evidence because Perry was not qualified as an expert as required by HRE Rule 702. Thus, defense counsel argued that Perry's testimony did not

constitute sufficient foundation to prove that the enzymatic method is a sound scientific procedure.

### 5. Motion for Judgment of Acquittal

Following closing arguments, Defense counsel made a motion for judgment of acquittal again asserting that the State did not lay an adequate foundation to admit evidence of the blood test results. The district court denied defense counsel's motion for judgment of acquittal.

The district court found Villena guilty and sentenced Villena to a $400 fine plus court costs, and other mandatory conditions.

### B.   ICA Proceedings

The ICA, in its May 19, 2015 Summary Disposition Order, affirmed the Judgment of the district court. The ICA concluded: 1) evidence of Villena's blood test result was properly admitted because the record shows that the DUI coordinator approved the testing procedure and the instrument; 2) the DUI coordinator licensing letter was properly admitted as a self-authenticated public record; and 3) the blood alcohol testing statement was improperly admitted into evidence but that error was harmless in light of Exhibit 1 and Perry's testimony. The ICA also determined that Villena waived the argument that the State failed to strictly comply with HAR § 11-114-23(a)(3) and (b) because Villena did not timely object. As to Villena's

confrontation rights, the ICA held that the DUI coordinator's licensing letter was a nontestimonial record and therefore not subject to the Confrontation Clause.

## II.  Standards of Review

### A. Admissibility of Hearsay

"[W]here the admissibility of evidence is determined by application of the hearsay rule, there can be only one correct result, and the appropriate standard for appellate review is the right/wrong standard."  State v. Moore, 82 Hawai'i 202, 217, 921 P.2d 122, 137 (1996) (internal quotation marks and citation omitted).

### B. Evidentiary Foundation

Before a test result may be introduced into evidence, "a foundation must be laid showing that the test result can be relied on as a substantive fact."  State v. Werle, 121 Hawai'i 274, 280, 218 P.3d 762, 768.  "When a question arises regarding the necessary foundation for the introduction of evidence, the determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse."  State v. Eid, 126 Hawai'i 430, 440, 272 P.3d 1197, 1207 (2012) (quoting State v. Assaye, 121 Hawai'i 204, 210, 216 P.3d 1227, 1233 (2009)).

### III. Discussion

### A. The Trial Court Did Not Err in Admitting Villena's Blood Test Results

To introduce blood test results proving intoxication, the State must lay a proper foundation. Werle, 121 Hawaiʻi at 282, 218 P.3d at 770. "As part of the foundation, the prosecution must establish the reliability of the test results which establish intoxication." Id.; see also State v. Wallace, 80 Hawaiʻi 382, 407, 910 P.2d 695, 720 (1996) (explaining "[a] fundamental evidentiary rule is that before the result of a test made out of court may be introduced into evidence, a foundation must be laid showing that the test result can be relied on as a substantive fact" (citation omitted)).

To determine the reliability of the enzymatic blood testing method used here, the State must show compliance with the factors we laid out in State v. Montalbo. 73 Haw. 130, 828 P.2d 1274 (1992). Under Montalbo, whether a scientific procedure—such as the enzymatic method, which Perry used to test Villena's blood—is reliable depends on three factors: (1) the validity of the underlying principle, (2) the validity of the testing method applying the principle, and (3) the proper application of the testing method. Id. at 136, 828 P.2d at 1279. To demonstrate the validity of the scientific evidence, expert testimony is needed. Werle, 121 Hawaiʻi at 282, 218 P.3d

14

at 770. Montalbo requires that the expert's opinion "have a reliable basis in the knowledge and experience of his or her discipline." Werle, 121 Hawaiʻi at 283, 218 P.3d at 771.

However, we have recognized a "shortcut" to establishing Montalbo reliability for blood testing procedures when the State proves "that the DUI coordinator gave written approval of the procedure and instrument used to test [defendant's] blood." Werle, 121 Hawaiʻi at 284, 218 P.3d at 772. Such written approval by the DUI coordinator "relieves the prosecution of the burden of presenting expert testimony to establish the reliability" of the instrument and procedure used. Id. at 285, 218 P.3d at 773. In other words, written approval from the DUI coordinator is a shortcut for the first two factors of Montalbo—which require the State to demonstrate the validity of the underlying principle and the validity of the testing method applying the principle. Accordingly, to lay a foundation to admit Villena's blood test results under the shortcut method, the State needed to show 1) that the DUI coordinator gave written approval of the enzymatic method and the blood testing instrument (the Werle shortcut), and 2) that Perry properly conducted the enzymatic method on Villena's blood (the third Montalbo factor).

15

### 1. The DUI Coordinator's Licensing Letter Was Admissible Nonhearsay as a Document of Independent Legal Significance and Satisfied the Werle Shortcut

In order to satisfy the Werle shortcut, the State must establish that the DUI coordinator gave "written approval" of the procedure and instrument used. Werle, 121 Hawaiʻi at 283-4, 218 P.3d at 771-2. This is in accord with the statutory requirement for blood alcohol testing procedures to "have been approved in writing by the DUI coordinator." HAR § 11-114-22(a). Here, the written approval of the procedure and instrument is a letter to Perry, dated November 5, 2011, from the DUI coordinator. The letter states that it "constitutes a license for the City and County of Honolulu Health Services Division Laboratory to conduct blood alcohol testing in accordance with Hawaii Administrative Rules, Title 11, Chapter 114 (HAR-11-114)." The letter explains that the licensure of the Laboratory was based on the Laboratory "having fulfilled requirements of HAR-11-114-18(b)." In addition, the letter confirms that the Ace Alera instrument was approved "to be used for the determination of blood alcohol concentration." Specifically, the letter states that "[t]he addition of the ACE-ALERA Clinical Chemistry analyzer . . . to the 'Quantitative Enzymatic Determination of Alcohol' procedure[] has been evaluated" as meeting the requirements of HAR § 11-114-22. This letter is precisely the type of evidence the Werle shortcut

requires.  Unlike the licensing letter at issue in Werle which we found deficient for failing to mention the precise testing method and instrument used, the licensing letter here specifically approves the instrument and method used to test Villena's blood.  See Werle, 121 Hawaiʻi at 284, 218 P.3d at 772.  Accordingly, the licensing letter satisfies the Werle shortcut to show that the DUI coordinator gave written approval of the method and instrument used to test the defendant's blood.

However, Villena asserts the court erred in admitting the letter because it was inadmissible hearsay.  Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  HRE Rule 801 (2012).  This definition is identical to that contained in the Federal Rules of Evidence (FRE) Rule 801(c).  Hearsay "is not admissible except as provided by these rules[.]"  HRE Rule 802 (2012).  It is well-settled that statements of independent legal significance are not hearsay.  See FRE Rule 802(c) cmt. ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); see also A. Bowman, Hawaiʻi Rules of Evidence Manual 8-7 (2016) (characterizing as nonhearsay statements with "independent legal significance" which "are not offered to prove the truth of the

17

matter asserted"). This type of evidence is considered nonhearsay because the statements are not "offered to prove the truth of the matter stated" but instead are "offered simply to show that the statement was made." West Coast Truck Lines, Inc. v. Arcata Community Recycling Center, Inc., 846 F.2d 1239, 1246 n.5 (9th Cir. 1988); see also Gonzales v. City of San Jose, 2015 WL 2398407, *6 (N.D. Cal. 2015) (noting that admission of a copy of a driver's license into evidence was "hearsay to the extent offered to establish Plaintiff's height, weight, and appearance on February 13, 2012, as asserted in the license, but not hearsay to the extent offered to show the identifying information in the Department of Motor Vehicle's records and available to Defendants on that day"). This doctrine is often applied to evidence of contractual agreements. See Island Directory Co. Inc. v. Iva's Kinimaka Enterprises, Inc., 10 Haw. App. 15, 21-22, 859 P.2d 935, 939 (1993). In Island Directory, two parties disputed the existence of a valid contract. Id. at 20, 859 P.2d at 939. One party sought to introduce a written document which the other party admitted signing. Id. The ICA held that the document was nonhearsay because it "was not offered into evidence to prove the truth of its contents, but to prove that it was made, signed by Iva, and expressed the legal relationship of the parties." Id. at 22, 859 P.2d at 939-40. The existence of the document was "highly relevant because its

legal effect [was] at issue in the case." Id. Similarly, Professor Bowman uses as an illustration of a nonhearsay statement of independent legal significance a declaration by an insured that "I hereby cancel my insurance policy." A. Bowman, Hawaiʻi Rules of Evidence Manual 8-7 (2016). Because these words effect a cancellation, they are "not only evidence, but accomplish the legal event. The words *effect* the cancellation as surely as words of slander produce a tort." Id.

Likewise here, the licensing letter was not being introduced to prove the truth of its contents, but rather because its legal effect (that the lab had received written approval from the DUI coordinator licensing its instruments and methods) was at issue in the case.[6] To satisfy the Werle shortcut for laying a proper foundation to introduce blood test results, the State must show "that the DUI coordinator gave written approval of the procedure and instrument used to test [the defendant's] blood." Werle, 121 Hawaiʻi at 284, 218 P.3d at 772. The State introduced the licensing letter to show that the DUI coordinator had given written approval of the enzymatic method and the blood testing instrument used to test Villena's blood.

---

[6] In seeking to admit the letter into evidence, the State described it as "a letter, um, which from them [the State] went to Ms. Karla Perry which purports to establish – uh, constitute a license that the City and County of Honolulu is licensed to conduct the blood alcohol testing."

Accordingly, we hold that the licensing letter was admissible as nonhearsay and conclude that the trial court did not err in admitting the letter.[7]  Because we find the letter admissible, we also conclude that the State met its burden under the Werle shortcut to demonstrate that the State gave written approval of the enzymatic method and Ace Alera instrument.

## 2. Perry's Testimony Satisfied the Third Montalbo Factor and Therefore the State Laid a Proper Foundation to Admit the Results of Villena's Blood Test Results

Having found that the State met its burden under the Werle shortcut to satisfy the first two Montalblo factors, we next look to the final Montalbo factor, which requires the State to demonstrate "the proper application of the technique on the particular occasion."  Montalbo, 73 Haw. at 136, 828 P.2d at 1279.  Perry testified that she was employed as a medical technologist with the City and County of Honolulu and was qualified under HAR Title 11, chapter 114, which regulates blood alcohol testing, to draw blood and perform alcohol analysis.  She testified that she was licensed by the State as both an alcohol analyst and an alcohol testing supervisor.  Perry testified that she used the "Ace Alera" instrument manufactured by Alpha Wasserman to conduct blood tests based on the

---

[7]     Because we conclude that the licensing letter is not hearsay, we do not reach Villena's asserted error that admission of the letter violated his right to confrontation.  However, this does not connote our agreement with the ICA conclusion that, as nontestimonial hearsay, the licensing letter was "not subject to the Confrontation Clause."

"enzymatic method," the instrument and method approved by the DUI coordinator in the licensing letter. Perry's testimony that she was licensed by the State and tested Villena's blood using the approved instrument and method satisfies the third Montalbo requirement to demonstrate "the proper application of the technique on the particular occasion."

Accordingly, we conclude that the State met the burden laid out in Werle and Montalbo to establish a foundation to introduce Villena's blood test results.[8]

## IV.  Conclusion

For the foregoing reasons, we affirm the ICA's June 16, 2015 Judgment on Appeal but for the reasoning set forth herein.

Phyllis J. Hironaka for
Petitioner/Defendant-
Appellant

Brian R. Vincent for
Respondent/Plaintiff-
Appellee

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



---

[8]     Villena raises two additional issues in his application for certiorari, both of which are without merit.  We affirm the ICA in concluding that Villena waived any objection regarding strict compliance with HAR § 11-114-23(b) and (a)(3) by failing to timely object at trial.

We also affirm the ICA in concluding that the erroneous admission of the State's Exhibit 2 (a sworn statement by Perry providing additional detail regarding the procedures used to test Villena's blood) was harmless error.  Perry's oral testimony and the licensing letter provided sufficient foundation for the State to admit the results from Villena's blood test.  Accordingly, any error in admitting Exhibit 2 was harmless.